20-40359, Vilarreal v. City of Laredo. Mr. Morris. Thank you, Your Honor. May it please the Court, I'm J.P. Morris. I'm here to express an expression on behalf of Plaintiff Appellate for Vilarreal. Defendants and the State of Texas insist that government officials can turn routine journalism into a felony and do so without consequences. This Court should refuse that argument. Instead, Ms. Vilarreal urges that the Court uphold the First Amendment and its guarantees of freedom of speech and of the press and allow Ms. Vilarreal to pursue the remedies secured under Section 1983 by reversing and remand. Qualified immunity does not shield these officials who criminalize an expressive freedom that the press and the public rely on daily. And that freedom is asking government officials questions and reporting what those officials share. There are two key reasons highlighting why this Court should reverse the District Court's grant for qualified immunity. First, it was clearly established, if not plainly obvious, that the First Amendment protected Ms. Vilarreal asking a Laredo police officer questions about two public incidents and then reporting what that officer volunteered. Second, reasonable officers understand they cannot base the decision to arrest somebody on the exercise of a First Amendment right. And so having fair warning that Ms. Vilarreal just did what the First Amendment squarely protects, a reasonable official would not have enforced Texas Penal Code 3906C against her, nor would that reasonable official have even asked for an arrest warrant, knowing that he could not turn protected speech into probable cause. That's even more apparent because that reasonable official, like defendants, would have had months to consider the clear and settled constitutional principles limiting his acts. And not only did these defendants lack a reasonable basis to arrest Ms. Vilarreal, but as Ms. Vilarreal alleges, they did so for an impermissible purpose. They wanted to silence propounded reporting and recruit assistance. This case provides the Court an opportunity to refine the standards for First Amendment retaliation and selective enforcement claims, ensuring that citizens, including fearless speakers like Ms. Vilarreal, have a remedy when government officials abuse their power trying to silence speech they don't like. Ms. Vilarreal asks that the Court reverse and remand on her First Amendment, Fourth Amendment, equal protection and civil conspiracy claims. With that, I waive the remainder of my uninterrupted time and I welcome the Court's questions. So your claims have changed over time, as I understand it. So just tell us in a sentence or two, even if you're repeating yourself, as of today, what is your First Amendment claim? There are two First Amendment claims. There is a First Amendment claim for a direct violation based on the arrest. There is a First Amendment retaliation claim based on defendants' retaliation against Ms. Vilarreal's exercise of the right to criticize public officials. And the retaliatory act is also the arrest. So the panel rejected your retaliation claim, is that right? That's correct. But you're still pressing that? We are pressing that and we are asking the Court to reconsider its decision in Pena v. Tejada, where it said that to plead a retaliation claim, a plaintiff must offer evidence that they have subjectively chilled their speech and effectively that they have curtailed their speech. Is your First Amendment claim limited to asking for information or to the right to receive information that's voluntarily provided by some government official or police officer? There are two First Amendment rights, and you're asking about the direct First Amendment claim, Your Honor. One is, yes, there is a First Amendment right to ask government officials information. That is something that the press and the public rely on every day to borrow themselves this information. There is also a First Amendment right to receive information that the government makes available. That is shown, I think, all, it's one, it's a part of the First Amendment right to ask. If the First Amendment right to ask is limited by how the government responds, it's really no right at all. It's been a little bit uncertain over the course of this litigation whether your client is claiming some separate right as a journalist or just the general right that any citizen has, whether it's to ask for information or to speak out or to receive information. So tell us whether there's any special right, you used the word journalism earlier, that you say your client has that ordinary citizens would not. Yes, Judge Smith. The Supreme Court has made clear the rights of the press are co-extensive with the rights of citizens. We are not claiming a special privilege or special right based on the label of the journalist. The label does not matter. Whether we call Mr. Villareal a citizen journalist, a traditional journalist, or as the city called her a social media influencer, the label doesn't matter. What matters is our... So what is your theory as to what your client was actually arrested for? What was the charge? What act was your client accused of violating as a matter of state law? We're at the 12B6 stage, so let's look at the pleadings. Ms. Villareal's pleadings say the basis for her arrest was she asked a Laredo police officer for information about a suicide involving a border agent jumping off a public overpass in the city of Laredo, and she also asked that same officer for information about a fatal car accident in the city of Laredo. The officer freely volunteered that information, and the defendants say that Ms. Villareal asked for or received that information because she wanted to gain readers on Facebook where she publishes the news, and the government contends that information was non-public. In a nutshell, what the basis for the arrest was was routine journalism. The basis for the arrest, correct, if you will be a little more specific, was 39.06D, which has several elements to it, correct? That's correct. Why don't you correlate the, I mean, your client and your complaint basically admit every element of that offense, correct? I don't think, I don't know if that is correct, Your Honor. She received non-public information from a government official with access to that information and obtained a benefit. That's what the statute says, and those are all, all of those supporting facts are admitted in your complaint, and we did obtain a copy of the arrest warrant and the complaint, and all those facts are pled in the complaint, in the arrest warrant, which a magistrate had to approve before she was arrested, but we'll get to that later. Understood, Your Honor. The point here, one, is that what the statute elements say, that's not the proper question for the Qualified Immunity Consideration. What it is, is whether a reasonable official would have known that what Ms. Villarreal did is protected under the First Amendment. It's whether every reasonable officer would have known that there was no probable cause to arrest. It's not whether every reasonable officer thought she was a good journalist or not. It is not from the subjective perception of the arresting officer, as we know from elementary Fourth Amendment law, correct? That is correct, Your Honor. All right, so why would every reasonable police officer have known, although you are judicially admitting it, that her actions did not amount to a violation of 3906B? Let me break that down in two parts for you, Judge Jones. First of all, every reasonable officer would have known that it's elementary that the First Amendment protects asking officials for information and receiving what they volunteer. That's a familiar right. Is there also a statutory response to Judge Jones? As I understand paragraph 90 of the complaint, Villarreal specifically alleges that the officers did not have or allege a prohibition on disclosure. There is, Your Honor. So in that sense, the warrants, if they were available in the record, would actually help prove the allegation if it's true that the arrest warrants documents don't mention any particular prohibition so that the magistrate could then dutifully follow the law and see if an exemption was in fact cited and alleged. That is true, Your Honor. As State v. Ford from the Texas Court of Appeals notes, prohibited from disclosure means it has to fall within an exception under the Texas Participation Act. As the State of Texas acknowledges in their brief, there are some 60 exceptions, and the arrest warrant at the Davis don't identify one of those. They're also deficient because of the way benefit is defined under the Texas Penal Code. If we can go back, I think Texas also says it has to be illegal. In other words, prohibition on disclosure, as we heard yesterday, in another case, prohibition means illegal. It has to be illegal, and the way Texas construes the statute, it's narrowing. And it certainly does not grab what Ms. Villarreal did because, as you know, in paragraph 90 of the first amendment complaint, or paragraph 94, I believe, Ms. Villarreal expressly says the arrest warrant at the Davis were silent as to her knowledge or intent about whether or not the information was public. And I think you hit a good point, Your Honor. What the State of Texas and defendants are essentially saying is that Ms. Villarreal, and every other citizen, has an obligation to understand which of 60 exceptions to the Texas Public Information Act might apply. She admits that she was going through back channels to get the information from Officer Goodman, who was herself committing a crime. I'm familiar with a presentation where none other than Professor Eugene Bollock acknowledged that there was a problem when a journalist solicits information that is essentially asking another person to commit a crime. Do you disagree that Officer Goodman was committing a crime in her official position? I do not disagree with that, but I do disagree with the fact that Ms. Villarreal… Just to clarify, it's not… I'm sorry, but I wanted to hear the answer to this. I do not disagree with that, Your Honor, but I do disagree with any notion that Ms. Villarreal herself committed a solicitation for Officer Goodman to commit a crime. All she did was use routine reporting techniques, something that the Supreme Court has held is a lawful way to gather news, something that journalists from the New York Times to the Times-Picayune use every day to arm themselves and the public with information. If you buy the idea, or if you accept the idea, that the state of Texas can simply turn routine reporting into solicitation, unlawful conduct by statute, that would chill every reporter and every citizen who's even thinking about that. If we were here hearing a challenge to a conviction of Ms. Villarreal, it seems like that would be important. But where's the clearly established law that the Texas statute, at least on its face, says it's illegal to receive this information, right? That's what it says on it. So you're saying that's unconstitutional. Where's the clearly established law that would tell every reasonable police officer that the statute is unconstitutional? I would point to two areas. First of all, I think this case is further than Hope v. Pelzer. The right to ask is apparent. Within that, there has to be a right to ask. I didn't hear the case that you said. What? I'm sorry, I can't hear you. Hope v. Pelzier. What case did you say? I would start with Hope v. Pelzer, Your Honor. That's the case that gets us into the obvious area. This is an obvious First Amendment violation. But even if the court does not accept that, we can still look to principles from Supreme Court decisions that apply with obvious clarity to clearly establish the contours of the right here. I would start with Smith v. Daily Mail and Florida Star. In both situations, the government tried to either suppress or criminally punish the government for the oppressive use of information that the government and the government officials itself made available. The Supreme Court rejected the government's attempts to do that, and you have cases beyond that. Landmark Communications v. Virginia, Oklahoma Publishing Co., Cox Broadcasting v. Cohn. Every time the government tries to suppress or punish the press from using information that the government or its officials itself made available, and every time the Supreme Court upheld the First Amendment right and refused the government's attempt to burden or punish the First Amendment right there. So is this statute unconstitutional as applied or unconstitutional spatially according to you? According to me, it's both, Your Honor, but we don't have to reach that question to decide in Ms. Villarreal's favor today. Well, no, because as the Chief Judge said, all we need to decide is whether it was so obvious that it's a statute under which there are prosecutions, which has been interpreted authoritatively by the Attorney General of Texas, which, as you know, is as good as, you know, a binding interpretation of law. And explain to me why a statute that is not challenged, not declared unconstitutional at the time of the arrest, gives notice to every reasonable officer that it cannot be applied. The question here is not whether an officer believed he could shoehorn Ms. Villarreal's protected speech into the elements of the statute. The question is whether or not a reasonable officer would understand. Okay, but wouldn't a reasonable officer think that if it was unconstitutional, the magistrate judge would know that? Wouldn't judges know more law than police officers do? No, Your Honor, not necessarily. First of all, we're talking about the steps the defendants took before they even approached the magistrate judge. They had no probable cause to approach the magistrate judge at all. This is where the Supreme Court's rule for Malley v. Briggs comes in, where a reasonable official would know. He lacks probable cause and shouldn't even ask for an arrest warrant. Qualified immunity does not shield the officer for asking an arrest warrant, even if the magistrate judge signed off on it. This isn't an instance where the defendants asked for a warrant within the range of their reasonable professional judgment. This is an instance where every reasonable official would have understood. Yeah, but, I mean, it's different when they lie about the facts and then get the warrant. That's a different cubby. But here you have a situation where you're saying it's so obvious anyone would know this is unconstitutional. How could then the magistrate judge not know? Because the magistrate judge would not issue a warrant on an unconstitutional statute, right? As the Supreme Court noted in Malley, magistrate judges face docket pressures. They make mistakes. So, again, the danger, as the Supreme Court noted in Malley, when an official approaches a magistrate judge with information and facts and an arrest warrant affidavit that a reasonable official would understand cannot show probable cause, like facts that show no more than the exercise of the First Amendment right, whether or not the magistrate judge signs off on it is of no consequence. I disagree, sir. Are you familiar with Michigan v. DeFilippo or High and Dee, North Carolina from the Supreme Court? I am, Your Honor. Why don't they apply? Because both of those cases reinforce the fact that the law officer applied for law as it is writ, and even if it's later declared unconstitutional, there is no improper arrest when behaving on that law. Michigan v. DeFilippo also carved out an exception for when a reasonable official would be bound to see the flaws in applying a statute. I must say, so what you're saying is there's a journalist exception? Not at all, Your Honor. You're relying only on journalist cases. So you're saying every Texas police officer has to know that I can make an arrest based on the elements of a statute being complied with, which you admit there was probable cause. You do admit that under the elements of 3906D. The magistrate judge agreed with that, but they were both fatally in error because it was obviously not applicable to someone both asking questions within the purview of the statute. First of all, Your Honor, I do not admit there was probable cause under the elements of the statute. As I said in my response to Judge Ho's questions, there were elements lacking on intent, there were elements lacking on prohibited from disclosure, and there were elements lacking on intent to benefit. Counsel, can I just clarify? Because that argument, I saw that in the complaint, and I very much saw it in the July motion to dismiss hearing. But it wasn't just a Malley argument. Paragraph 91 of the complaint alleges a Franks claim. In fact, the magistrate was lied to. I don't see where the district court ever resolved the Taint claim. That's true, Justice Nicholson. We did plead a Franks claim. And do you see it resolved anywhere in the dismissal order here? I do not, Your Honor. But you did raise it on appeal, didn't you? We did not, Your Honor. We don't need to get there because this is a— And anyway, you have no—there is not a single statement in those warrants that is untrue. There is not a single statement in those warrants that I'm aware of that is untrue. There are material omissions. But to get back to your— Wait, you meant omissions or admissions? Omissions. Omissions, right. Such as? Such as what? Such— A claim that's improper motive? Such as Ms. Villarreal's intent in her knowledge of whether the information she was asking for was nonpublic. If you accept the state of Texas's construction of the statute, that's an essential element. They also omitted in which— In other words, there's no prohibition, is what you're saying? The statute is nonpublic. The warrant affidavit says it's nonpublic. But non— Even if it is nonpublic, according to Texas law, from the research that several of us have done— Even if it is nonpublic, Your Honor, that does not justify violating a clearly established First Amendment right to use routine reporting techniques to gather and report the news. The information that the journalists got in Florida Star, that was supposed to be nonpublic. The information that they obtained by asking questions of the police officers and the prosecuting attorney in daily mail. The state considered that nonpublic. All that stuff was left out in the open, was it not? It was not in daily mail. I thought it was left out on a table where the journalists could talk. In Florida Star it was, but it was inadvertently left out. Yeah, well, it was like recently when TSA, quote, inadvertently allowed someone to disclose the no-fly list, which was promptly published. They inadvertently disclosed it, the journalists took advantage of that. But that's not what the lady did here. That's not. What Ms. Villareal did here is what the reporters did in daily mail. Went out into the field, asked a police officer for information, which the Supreme Court said was a way to lawfully obtain that information. A few minutes ago you were interrupted in giving an answer, and I don't want to put words in your mouth. I'd like you to complete your answer. But I thought you were saying that it was unreasonable for your client to be aware of, I think you said, 60 exceptions in the statute or in the governing law. If that's what you were going to say, my question would be, you're saying it's unreasonable for her to know about 60-plus exceptions, but it's unreasonable for an officer to know about all 60 of those, even though a magistrate has approved a warrant. I don't quite see how those two can jive. What's unreasonable here, Your Honor, in terms of what the defendants did, is a reasonable officer would have known that the First Amendment protected what Ms. Villareal did. Whether the information was non-public or not, she had a right to ask for that. But address yourself to what you were referring to with 60 exceptions, if I heard you right. Sure, Your Honor. My point is this. It's backwards that the government would put the burden on Ms. Villareal and every other citizen to know whether a question and information they were seeking fell into one of 60-some-odd exceptions, fell into and had to comb through a bunch of attorney general opinions to determine whether or not they could exercise their First Amendment right to ask an official and receive information from that official. But the officer is supposed to know about all 60 of those and not to rely on what a magistrate said in approving the application. Our point here is twofold, Your Honor. One, again, it was unreasonable for the officers to arrest Ms. Villareal for routine reporting techniques, no matter what the statute said. We've cited many cases in our brief upholding this principle. Mink v. Knox from the Sixth Circuit. Sandal v. Larry and Lawrence v. Reed from the Sixth Circuit. Snyder v. Piperiero from the Eighth Circuit. So I think what those cases show, Your Honor, is no matter what a statute says, the first question the officer has to ask himself is, is the target of my investigation exercising a First Amendment right? If they are, the officer has to stop. So I have two quick questions related to that. So it's your position that you say that there wasn't probable cause under the statute itself because there are errors or omissions. But even if there were not, they still wouldn't have probable cause because they would recognize that the statute conflicted with the First Amendment. So probable cause is not dispositive, whether it would ordinarily be present or not under the warrant. Is that correct? Do you think you win either way? That is correct. Okay. And then there are a lot of officers, and I'm not sure it was all parsed out. Are you saying that that's true for those who were not executing the plan to say what law could we come up with to stop her, but the ones who just actually are in the field executing the warrant, where they just get it from the magistrate, you know, they go out, they're not in on the grand scheme allegedly. Does it apply to them in the same way? I think you hit on a good distinction, Your Honor. We're not suing the defendants who actually put Ms. Villarreal in handcuffs. We're suing the defendants who acted objectively unreasonably. As the Supreme Court put in Malley, when officials act outside their range of reasonable professional judgment and ask for a warrant based on what a reasonable officer would know has no probable cause, that raises the danger of a wrongful arrest and putting an innocent person in jail. And that danger is magnified when first when the arrest warrant and probable cause is based on no more than exercise of a First Amendment right. That's what happened here. The Malley rule should control—I see my time is up, Your Honor. May I briefly finish? Yes. The Malley rule should control. As this Court has said before, for example, in cases like Whole Woman's Health v. Smith, the Court has an independent obligation to examine the record to ensure that the field of free expression is not intruded upon. If it does that when it's sitting in error of a district court judgment, it certainly should do that when it's examining the basis for an arrest warrant. Thank you. Thank you. Good morning. May it please the Court. I'm Mick McKamey from Taylor Olson Law Firm with my associate Alicia Creed. We're here representing the City of Laredo defendants. I have not waived the question time, but I would like to start out by saying basically what Judge Jones just said, which is Section 39.06 of the Texas Penal Code is not patently or obviously unconstitutional. It has never been held unconstitutional by any court. The only inference that's been made about the constitutionality of this particular statute that we're aware of— What about the Newton case? I'm sorry? Right over here. Because you said it's never been held unconstitutional. I don't know that that matters, but just technically there is the Newton case. I'm sorry. I'm having trouble with the— There is the Newton case. Go ahead. I'm sorry. Actually, the only pronouncement as to this statute that we're aware of, Your Honor, is made by Judge Knoxon in the District Court on the writ of habeas corpus for misdemeanor real, which held that the statute was unconstitutionally vague. For purposes of qualified immunity analysis, the key issue is probable cause, whether probable cause existed. And in this case, there are clearly four elements to Section 39.06. Can we jump to the element about the prohibition on disclosures? I think that's what we're all focused on anyway. I understand that we're focused on the whole statute, Judge Jones. I'm sorry, Your Honor? What did you want to jump to? I'd like to focus on the prohibition on disclosure. Do you agree that when we focus on the whole statute, we focus on each element, and any failure of any element would be a— I believe that's so. Okay. In terms of the prohibition on disclosure, just very quickly, I'm sorry, which one are you relying on? I'm going to shut up. Which prohibition on disclosure are you relying on? That's all I wanted to ask. We feel like every element has been met by the affidavits of this statute, in this statute. It is a statute that regulates conduct, not speech. Conduct is soliciting or obtaining information that is not readily accessible to the public, and it ties that to Chapter 552 of the Government Code. You know, the plaintiff and the appellant have made several arguments here today that traditional journalists would be silenced or citizens aren't supposed to know all the elements of the exceptions to the Texas Public Information Act. Well, they don't have to. Even Ms. Villarreal states in her complaint that she has approached the proper authorities to decide those issues about what is public and should be public and available. May I offer a hypothetical? I'm sorry? May I offer a hypothetical? I'm having a lot of trouble— May I offer a hypothetical question? I'm going to offer a hypothetical question. Okay, good. You're aware that school districts have gotten a lot of attention recently, whether it's Uvalde, Mountain County, Virginia. My question is this. Let's say a school superintendent is fired, and you are a concerned citizen who really cares about who the next person is going to be hired. So you want to know 30 days ahead of the vote by the school board who you're looking at so I can research and publicize who's being considered. Am I allowed to ask that question? Certainly. You can ask the question. But this statute prohibits the solicitation or obtaining— That's not illegal under one of the exceptions that are subchapter C? No. Okay. The question has—and since the statute's tied to chapter 552, there's a method to ask those questions or to seek the information. To seek information that is not readily accessible to the public is an element of the offense. So if—and Ms. Fiorile has availed herself of that. She's gone to Officer Baez, the PIO of the police department, asked for information and knows how to do that. In this case, she didn't do that. She went through the wrong channels. She did not follow the procedures under the— Wrong procedure, so jail. Right. And that is a real protection in this case because— with how the records are produced to a citizen or a journalist or anyone else. You follow the procedures in chapter 552. Asking a back channel for information, even the Code of Ethics of the Society for Professional Journalists, dissuades journalists from taking that action. In this case— Can I ask a question of how broad your First Amendment theory is? We know there are lots of these exemptions from prohibitions on disclosure, but what if we repealed 3906D so that it's just— we're just talking about any non-public information? I take it you would have the same argument, right? Government's allowed to protect its information. From that standpoint, it would be the same argument. However— Okay. So if I'm a Senate staffer and I get a phone call from a judge asking for information that's not public about a judicial vacancy, that's something that we criminalize? Yes. But this statute is designed by the legislature to have a significant penalty for production of the information, as Officer Goodman did, and by those who receive or solicit the information. It has nothing to do with publication. Florida Star and Daily Mail are both cases that are decided by the plaintiff, and they're both cases that involve publicly available information or information that had been made available to the public. And there was an attempt to withdraw the information or to seek a penalty for the publication. That's not what we have here. There is no publication. There was no actions taken related to the publication. The plaintiff also, in their complaint, talks about no other persons have been prosecuted under this statute. And there's a good reason for that, I believe. I think a reasonable officer could believe this as well. Journalists know, citizens know, after the information through the proper channels under 552. When you do that, it's protected. Then you only receive information that should be made available to the public. If you seek it in another way, you're at risk of violating 39.06. And that's what Ms. Muriel did. Counsel, does the city have a position on whether this court should alter and make clear that we do not have a subjective test for the chill element of First Amendment complaints? We've been asked to update our precedent in accordance with the Wilson case, I think it's. Eden case. But then the subsequent Supreme Court case. Should we do that, or does the city have a viewpoint on that? Well, in order for there to be a chilling effect, there must be some type of injury to the person, something that really creates the chilling. Right, and we've had a subjective test that if you're a particularly fortified person, you can't be, you're not the victim because you're really strong or stronger than the average person, which that is not the test that the Supreme Court has recently articulated. So I'm just asking, do you believe that we should or should not change that? You may not have a position on it. Should we have a person of ordinary firmness rule in this circuit? Since we're all here on bonk, and the Supreme Court's told us what the law should be, should we make sure that it's a person of ordinary firmness? Well, I think that becomes a matter of how you evaluate the evidence presented in the pleadings of the plaintiff in this case. I don't think you reach that in this case because the plaintiff says in her own petition that she's continued to use the same social media posts and has not been dissuaded. So there's been no injury at all. I'm just wondering, if I'm not interrupting, did her readership increase after she got arrested? Maybe the plaintiff... Anecdotally, we believe so, Your Honor, and part of the reason I think that a reasonable officer could believe that she received a benefit is that, and it's not the same for professional journalists. It's just not, even though the plaintiff would have you believe otherwise. Ms. Villarreal is a social media influencer. She posts only on Facebook, and she seeks influence. That influence includes benefits, which can be even in her own pleadings say she received, such as meals, sponsorship and endorsement. She says in her pleading that city officials, presumably including police officers, watch her Facebook page. But influencer or not, journalist or not, is it the city's view that a citizen of Laredo does not have a clearly established right to ask questions of their government? They most certainly do have a... To solicit information from their government. They do have a right to do that. But if they want a record, especially one that is subject to... Because I thought you said in your brief, quote, there is no clearly established right to solicit information, unquote. Okay, the information we refer to there are the documents such as those that Ms. Villarreal got or saw, and there is a way to obtain those, and every citizen has a right to do that. Even journalists don't have an unfettered right to information. Should we, even if we were to find that there is no clearly established right, and I'm not foreshadowing, I'm just assuming arguendo, should we state that there is a constitutional right to ask your government for information, because we under Pearson can do one or two in whatever order, and we have done that in Morgan v. Swanson, for example? Right, and it states directly in the Constitution already that you have a right to petition the government. But would that clarify things for police officers and citizen journalists alike? I don't think so. Didn't the panel majority agree with the dissent that this statute is not obviously unconstitutional? On its face. On its face. Well... Have you read the introduction to the majority opinion that goes extensively about how there's an obvious constitutional violation in this case? Well, if you're talking about as applied, is it what a reasonable police officer... Would a reasonable police officer know what standards to apply as applied? Do we apply intermediate scrutiny because the statute... I understand you disagree. I'm just saying, does the majority opinion in the introduction say what it says? Oh, yes. I withdraw the question. Sorry, I'm not sure what the answer to my question is. Do you believe we should clarify, if you're not sure, or despite whatever the panel opinion says, whether or not it's clear that you have a First Amendment right to ask your government questions, do you believe we should clarify or do you think it doesn't need clarification? I'm not foreshadowing. I think that right is there. The problem is the time, place, and manner of that questioning is restricted by this statute and by Chapter 552. Can I follow up? I assure you that's a very helpful answer, and this follows up on your exchange with Judge Willett. I think, if I hear you, and I want to not mischaracterize, do you have a right to ask for information? I think you're saying, absolutely, that's clear. That's an abolition clause. Your point is you have to go through channels. You have to file a PIA request. You have to fill out the right document. You have to submit it through formal channels. That's your point. That's how you vindicate that right. That's Texas law. Okay, exactly. So wrong process, that's the jail time. Okay, here's my only last follow-up question on that. Doesn't doing all that through the PIA also violate 3906C and D under your theory? It's seeking information that's not public. It's the exact same information. Why doesn't that also violate 3906? Soliciting or obtaining what you're at your request. Your PIA request. That's soliciting information that's not public. Isn't it? Well, the difference is, you know, it actually doesn't do the exact same thing. That's what I'm saying. The difference is there is a process, there is a means for seeking that information, for soliciting the information, as it were. And that doesn't somehow meet the elements of 3906? I don't believe so. Because there has to be determination by some. You see, that's where you get into the reasonable officer standard at some point, because the officer is reading the elements of the statute and seeing what, just because, if the 552, chapter 552 procedures are, they go through that, and it's determined that the information is disclosable, it's disclosed. If they determine it's not disclosable, it goes through that process. If that information that was determined subject to one of the exceptions is then disclosed, there's a violation of 3906. All right. You're way beyond what we want. The theory is, government interest, sorry, very quick. The theory is the government interest in enforcing the proper channels. That's the sort of why we need to jail you because you didn't write the right paperwork. I suppose you could use the term proper channels, Judge Ho. However, proper channels is state law, and a reasonable officer would know that exists and know that if there's been a determination by, let's say, the attorney general who issues a letter or a decision that the information requested by a citizen or a journalist is subject to one of the exceptions from disclosure. And if it's then disclosed, then it could be a violation. All right. Well, you've exceeded your time. Thank you. Thank you. May it please the court. My name is Eric McGee, and I represent the Honorable Isidro Alaniz, who is the Webb County District Attorney and the First Assistant District Attorney, Ms. Marcella Jackaman. In this case, Magistrate Judge Kazin's decision to grant our motion to dismiss for failure to state a claim should be affirmed by the court. As Judge Kazin noted, that his analysis, and I believe even Mr. Morris said, is limited to the facts that have actually been fled in this matter. And when we look through the discussion that's gone forward today, I don't believe that this lawsuit is actually about the constitutionality of Section 39.06, specifically C. It's about what, as Judge Jones said, every reasonable officer would have known. And in this matter, we have the case of where an officer from the city of Laredo comes forward for my client specifically with Statute 3906C and prepares an arrest warrant affidavit. And that arrest warrant affidavit was simply just reviewed by the District Attorney's Office and then it proceeded on to an intermediary, an independent intermediary, to make the determination of whether the arrest actually would occur. Did the application refer to any particular exemption from disclosure? Of the Public Information Act? Is that the exemption from... I think we're on the same page. I'm asking, there's a complaint allegation, I think it's paragraph 90, that the arrest documents are on their face deficient because they don't refer to any prohibition on disclosure, which everybody agrees is a required element under 3906C and D. So what Subsection C actually requires is those two elements, right? That the person commits the offense with the intent to obtain for a benefit to get access through the governmental employee who may have access to it, and that the information has not been made public. That is Subsection C. Subsection D says, the definition of information that has not been made public means any information in which the public does not generally have access and is prohibited from disclosure under Chapter 552 of the Government Code. Well, in this section, it's undisputed that the public did not have access to this information. The pleadings themselves say it had not been made public. She admits that she didn't go through Mr. Baez, the public information officer or the spokesperson for the city of Laredo. She decided to go through a backdoor channel on information she knew was not public. That's why she went to go obtain the information. So when you look at the arrest warrant affidavit, it specifically says the things I believe Judge Jones pointed out was, one, the information was not public, had not been made public at the time. He alleged that an unnamed source named DV, who is a defendant in this case, that the plaintiff received this information from Officer Goodman, who communicated it with the plaintiff. The officer who filled out the arrest warrant affidavit said and alleged that the plaintiff gained additional followers on her LaGuardia Loca Facebook page by publishing the news before other news outlets. And then her pleadings themselves say, since we're at a pleading standard for failure to state a claim based on what the actual pleadings say, she readily admits and does not contend that she has never received any economic benefit from reporting police information on her LaGuardia Loca page. She actually says contrary. Let me ask you, hard to tell where we're from, aren't we? I'm over here. Let me ask you a little bit of what Judge Ho was saying. The affidavits themselves do not identify a subpart of 552. I asked you what category of non-public information we're talking about. What we're talking about is 552, 108, I think, now, whatever one it is, which isn't, to me, directly on point. What is the effect, regardless, first, do you accept, and this is just a fact question, I didn't see it, that there is no reference in any of the documents presented to the magistrate as to which part of the Public Information Act had declared this to be non-public? Is that correct? There is no reference to a specific subsection like 552, 108? I just want to yes or no because that's not really my question. It's a premise. Is that the correct premise? The affidavit, I don't think that's the correct premise, but the affidavit does not say the Texas Public Information Act, Chapter 552, subsection whatever. It does not have that. Okay, so let me move on from that, which is what you were probably trying to answer before you told me whether that was the right premise. What is the effect of that if we're saying that every reasonable officer needed to know that what it was doing was improper? Isn't there some effect that no specific provision was identified? And with respect to my friend Judge Jones, I've looked at the materials that have been identified that might be the support but it would have been good to have the best guess in the affidavit itself. So what is the effect that nothing had been identified yet that would have declared this to be non-public? Well, I don't think there is an effect because the elements are laid out in subsection C, which it says that the person had the intent to obtain the benefit through an access of public government entity that had not been made public. That's listed right there. The magistrate who signed the arrest warrant simply could have said you haven't met the elements of the statute. There is no requirement in the statute that says you are required to list a subsection of Chapter 552.108 in order to obtain the benefit of what this criminal statute says. Actually, the Texas Public Information Act itself does not even allow it. The Texas Public Information Act has very strict criteria for the process that you have to follow in order to determine that something will not be released. And that requires the governmental entity itself to seek a determination from the Attorney General's office in order to withhold information. So had a Public Information Act request submitted in this, the governmental entity, in order to withhold any information because you have the right to ask for documents from your government, would then be required to take that Public Information Act request within a certain timeframe, submit it to the Office of the Attorney General and the Office of the Attorney General at that point make a determination as to whether or not it could or could not be withheld. There is no dispute, is there, that the police have the right to withhold the names of fatalities or suicides pending an investigation to ensure that it's just a suicide and just an auto accident and pending the notification of family members. Is there any dispute about that under Texas law? There is no dispute. Number one. Number two, if we are talking about the niceties of the warrant affidavit, whether the warrant affidavit cites a particular statute and the particular subsections or cross-references of that statute, it seems to me is a matter of Texas law, not constitutional law. That's correct. The legislature would have to make that an element that must be required in order to follow that. I mean, I could think that a police officer could say, I apprehended so-and-so outside a certain residence. The windows to the residence had been broken in. So-and-so was brushing glass off his person, had a cut, and therefore I have reason to believe, probable cause, that he had been breaking and entering the residence to which he did not have legal access. Would he have to cite the breaking and entering statute? No, Your Honor. And there's tons of case law out there related to that. Even if he had cited it incorrectly, you still can have probable cause for the crime itself. Even if you make a good faith effort and it is an incidental error that does not meet, you still have probable cause under those types of criminal statutes where you have met the elements of the criminal statute. Quick question. Quick question. Are you talking about documents only or confirming something that might be in the document? Because we talked about documents and the process to get documents. So just asking the question of the law enforcement officer, I mean, they could refer you and say you need to go through the process, but it's asking the question without, when you're not actually seeking the document, is that itself a violation of the statute? It could be because when you ask, the Texas Public Information Act is such a tricky thing. Okay, so it could be even just asking the question. That's what I wanted to know. And if so, should we, even if you're correct, that every reasonable officer would not know and therefore there's no clearly established law, should we clearly establish the law in the circuit so everybody's not confused? May I continue because my time is running out? Yes. I don't think that's the requirement here today because that's not what this case is about. I don't think there is any confusion. I think the confusion has been built on something that this has to do with journalists trying to obtain information and that's not what this case is actually about. Even Mr. Morris himself said it doesn't matter whether she's a journalist or not or anything related to that. We're just talking about the elements of the statute, and I don't think this is a case that's actually determining whether there's some unfettered rule that you can go ask any question you want to or obtain any information that you have. Do you agree that the district court did not resolve the allegation in paragraph 91 that the police here, this is not an obviousness, vast sweeping First Amendment question. It is the allegation that the police here manufactured probable cause so as to arrest Ms. Villarreal. Did the district court resolve that allegation? I would agree similarly to how Mr. Morris did in that that's not been taken up on appeal,  Thank you, counsel. Thank you. Thank you, Chief Judge Richmond, and may it please the court. The state has two interests in this case, the constitutionality of section 39.06c and what clearly established law means in the context of qualified immunity. I'll start with the first, which informs the second. Texas can and has banned participation in a government data breach. This takes it outside the authority upon which plaintiffs rely because all of them presume, as a number of your honors have asked, that the information was obtained lawfully. They have also carefully excused the question of whether or not the access to the information can itself be banned. The only time I'm aware of which the Supreme Court has actually addressed that question directly is in United States v. Williams, where Justice Scalia asked whether or not Congress could punish the access to classified information. He thought it was so clearly established that he said to ask it was to answer it. And that is the same situation here. Texas has made certain information... May I follow up on that, sort of the national security classified aspect? Your brief cites United States v. Rosen. Yes, your honor. I think that's the framework that you think we should follow. It's only a district court case, but that's the framework that you think we should follow. Yes, your honor. Why didn't you disclose or tell me if you read the opinion differently? Doesn't that opinion quite clearly say that if it's not national security information, then, quote, of course this would violate the First Amendment? Of course you can't arrest people for asking questions of their government for information. So in that case, the question, the particular nature of the confidentiality provisions were national security. There wasn't another asserted confidentiality rule. But to give another example... But didn't this court go further? It didn't just say this is national security. It said, look, I get the First Amendment objections. I'm only doing this for national security. Outside of it, of course, Congress could not violate free expression. That wasn't in the opinion also? That was in the opinion, but the question about whether or not another form of confidentiality could be protected was not an issue. And the Supreme Court has repeatedly stated that these types of questions need to be analyzed on a fact-specific level. And whether or not there are other governmental interests that protect the privacy or confidentiality of laws could very well be. That particular issue, that particular case only dealt with national security, so it only discussed national security. In terms of the case-specific aspect of it, did I hear you clearly in your opening that this is basically participation in any release of information? So in other words, that's the government interest here. You could repeal D and just say, you know what? Non-public, that's it. It doesn't have to be an exception. From that perspective, yes. There may be other problems with such a law. Final question is the PIA issue. I've heard several times now, just file a PIA request. What's the typical time between asking for information and getting it? The statute says promptly, so it could be very quickly. If there is a dispute about which information is disposable or not, it could take several weeks. That could be litigation. In litigation, yes. And that could take a long time. Yes, Your Honor. Does the public have an interest in getting information sooner than months or years? Certainly. And this is one area where we disagree with, I believe, the city in that we don't think that they had to go through the requesting process by asking for paper copies. And the reason why I would point you to is a provision, or page 536 of the Florida Star Opinion, where it's talking about whether or not the government act, whether or not the government's placement of this document in the public realm included an implied representation of lawfulness. Now, I think that phrase is very important because it goes to the question about whether or not, and you asked questions about process, if she had asked FISA, for example, for this information and received it, would it have been a violation of 39.06C? And I think the answer to that question is no. Because if you get it from an official source, there is an implied representation of lawfulness that is not present here, where a plaintiff deliberately decided to go outside the normal process and then outside the centralized, is not the right word I'm looking for here, but outside of the official channel to get information that she knew, or at least was reckless in not adding to the knowledge that this information was not legal to be disclosed. Ms. Pettit, from the obvious facts of this case and the way that police departments operate and the fact that there is a public information officer in Laredo named Baeza, it is plain beyond her adventure that the procedure of the TPIA is not the only way in which a journalist or any person can gain perfectly legal access to this accident information, correct? Certainly, Your Honor. The person doesn't have to await the publication of an accident report, although some of this information can be redacted. She could have waited like the rest of the press in Laredo and obtained it from Mr. Baeza a couple hours after the families had been notified. Certainly, Your Honor. And that is the distinction here, because there's a lot of discussion about whether or not this was routine journalist activity. That is a phrase that was a descriptive one in Daily Mail. It did not create a constitutional text, because again, Florida Star emphasized that for, and I'm quoting here, they have carefully skewed reaching this ultimate question, mindful that prudent counsels are not resolving it anticipatorily. That's on page 532. Do we have a right to petition the government for redress of grievances? Certainly, Your Honor. Do we have a right to petition the government for information to support our grievances? Certainly, Your Honor. But you don't necessarily have the right to access information that the government has made confidential for sound public policy reasons. In other words, you have the right to ask for it. You cannot demand it. We're not saying the First Amendment codifies FOIA. Yes, Your Honor. And so the, and I believe Judge Jones was the one who brought it up, that 39.06a and 39.06b made it a crime for Officer Goodman to provide this information. And it's well established that you can also... That's assuming, I just want to clarify, that's assuming exemption applies. Yes, Your Honor. It's the same test, Herb. Yes, it's the same test. And it's basically 39.06b recognizes that in any leak, there's a leaker and a leaky. And so there is 39.06a and 39.06b punish the leaker. And then 39.06b extends that liability to somebody who solicits and or receives that information. I don't think that simply asking the question meets the test. That's not normally what solicitation means in criminal law. And this court should read that term narrowly to avoid constitutional problems rather than creating them. But, and that is where I'd like to transition just a moment to talk about the role of the magistrate judge here. Because there is... Before you do, can I just throw out a hypothetical? Certainly. If a public official decides to provide this information, knowing that it's not allowed, theoretically putting themselves in jeopardy, in theory, you could quite easily entrap the citizen. The citizen's committed a crime, and the person's buddies in the government won't enforce it against that person. Just hypothetically, you do have that potential scenario, right? It depends if the citizen had the necessary mens rea. And I think that... Yeah, the citizen would have to ask the question. Right. So this goes to a number of your previous hypotheticals. For example, you asked about a superintendent. And there is a provision of the statute that makes the name of a superintendent, although not necessarily other information, confidential. And that is one of the mandatory exemptions that would theoretically fall within 39.06. But in your... So if I... So the other answer was wrong then. Yes. I would be committing a crime if it's a concerned parent. I want to know who Loudoun County is about to appoint. I want 30 days notice. So no... In the Senate, there's a 28-day rule minimum. So people want information. They want to know so they can research and then tell people and rally the troops and get the word out, please stop this hiring. That would be a crime. No, Your Honor. Because that does not have the necessary mens rea, which is for an economic benefit. Oh, no, no. I'm going to sell this information. Let's assume the benefit... Okay. Your point is you'd have to meet the benefit test. Can we get back to this case and talk about the magistrate? Certainly, Your Honor. So the state of Texas does not dispute that there are undoubtedly situations where this could be applied unconstitutionally. That is true for most statutes. But here we have where the... And my colleague on the other side emphasized that this had gone on for months. During those months, however, they didn't run off and make an unwarranted arrest. They talked to the VA, they talked to their superiors, and they took it to a magistrate. And the magistrate there with a statute that covers both constitutional and unconstitutional applications made the decision that this could be... There was probable cause that this could be constitutionally applied. That's what this court presumes, because this court presumes that state judges apply the Constitution correctly. And there's nothing in the rather vague inscription on pages 170, 171 of the affidavit, of the record that described the affidavit, to be able to tell that the magistrate judge didn't do that. How does Malley affect that? So Malley is a question about factual sufficiency. The Malley case does not actually deal with legal sufficiency at all. I am unaware of any case that has applied it in that manner in this circuit. So as a result, under qualified immunity analysis, that there isn't an exception that applies. If this court were to create a new exception... And I realize I'm out of time, Chief Judge Ritson, if I could complete my question. Thank you. If this court were to recognize a new exception, I would strongly urge that it be as equally narrowly drawn as Malley and Frank's, which require far more than conclusive allegations that nobody would have done this. It requires actual proof and actual... In front of you and saying, does this, on its face, meet and there's a strong presumption... Does this overcome the strong presumption that this was valid? And I would suggest that it does not here and the district court should confirm. Just one question. I was very grateful that you engaged with the Independent Intermediary Doctrine. Am I correct that around 40 to 45, you never assert there's a forfeiture issue here? You fully embrace and engage with Frank's? So the Frank's issue, I don't believe that it was raised on appeal, but I think that it was... My view on the district court's opinion is it's definitely raised in the trial court. There was an extensive hearing, an extensive discussion, in which there were some shifting positions. I think by concluding that they had not overcome the presumption that the magistrate warrant was valid, it's implicitly decided the Frank's decision. The only case they cite on that is Simpson. That's not obtained case history. No. So, if there are no further questions, we request you affirm. Mr. Morris, let me pose to you a hypothetical that has nothing to do with the facts of this case. Texas has a foster care system. It carefully protects information about foster children, obviously to protect the interest of the child, and each of the foster care children has one or more caseworkers who deal with the family situation, whatever it might be, and, of course, those caseworkers also maintain confidentiality in order to... for the operation of the foster care system and to protect the interest of the child. You have said that there's no difference between journalists and ordinary citizens, so let's say an ordinary citizen wishes to contact a caseworker, call the caseworker at home and request confidential information about one of the foster care children. Let's assume that a specific Texas statute says that the caseworkers are not to be contacted and request information about confidential information on a foster care child. Is it your contention that the First Amendment would protect the right of any citizen, or for that matter, hundreds of citizens, to contact caseworkers to request that confidential information? That is our contention, yes, Your Honor. A feasible question to a caseworker in that circumstance would absolutely be protected under the First Amendment right to ask public servants questions. Your Honor, and that brings me to my opening point here. This was not a data breach. This was not Ms. Villarreal asking for information that implied national security secrets. This was routine reporting. Let me ask you about that. Let's suppose that Ms. Villarreal, there was an ongoing criminal investigation and she knew that she couldn't get the identities of material witnesses from the public, from the Laredo Police Department, but she went to her back source and said, tell me what you know about this investigation. And information about a witness was revealed to her. And she had also been promised if you can scoop this case, I'll give you a new piece of equipment to help you continue on your journalistic activities. And she was trying to scoop the regular press to keep her business alive. And the police officer gives her the information that's not public. She makes that public. And it results in the death of the witness, for example, or harm to someone else. Is that protected by the First Amendment? It's a closer call, Your Honor, because what I heard in your hypothetical is that Ms. Villarreal essentially bribed the officers. No, but she's not bribing the officers. A third person has said, Ms. Villarreal, you know, this is a really high-profile case. If you can scoop this and promote your Facebook, get bigger, wider circulation, and I'm on it, I'll give you more equipment, whatever. And so she goes and asks the question, gives the information, and makes it public. I understand your question, Judge Richmond. Yes, that would be protected. Okay. I think at that point, we're getting into the Brandenburg test, where she would have to actively encourage and participate in that, you know, whatever the harm was. But asking and receiving the information that the officer could have been volunteered protected under the First Amendment. Can we punish the public official? Well, there's a well-established exception under the Freedom of Information Act, and I can't really tell you about Texas, but it probably has the same, the deliberative exception. So parties can make FOIA requests, and the government can say, no, we can't give you that information because it's a policy matter under deliberation, which we are entitled to keep confidential. So basically, you're saying that these are dead letters. Freedom of Information, if the whole idea of government confidentiality is a mirage because anybody can go and solicit information from anybody who is willing to take the risk. Look at the Supreme Court. Look at the bind they're in, for instance. There is no moral reprobation toward what is being done. So basically, you're saying government can't function. That's not what I'm saying, Your Honor. It's at risk of not functioning unless you can enforce these statutes. That's not exactly what I'm saying, Your Honor. This isn't, the government has a right to, and I see my time is up. May I finish answering your question? You went way over before, so why not now? Thank you, Your Honor. This is not about access. The government has a right to have public information access. It has a right to keep certain information nonpublic. What it doesn't have a right to do is when its officials volunteer that information, it does not then have a right to turn around and punish those who receive it and publish it. This is the foreholding of Florida Star, where it says, the Supreme Court says, the government doesn't have an obligation to release this rape victim's name, but that didn't make it unlawful for Florida Star to receive it and then publish it. The key point here is that it is clearly established that citizens and the press alike have a First Amendment right to ask officials questions and publish what those officials volunteer. This isn't a matter of the court needing to make that constitutional holding or to reaffirm that clearly established right. Thank you, Your Honor. The hearing has expired. Thank you. Thank you, Your Honor. This concludes this en banc argument. Thank you.